# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:08cv546

| | |
|---|---|
| WILLIAM W. DIMSDALE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 11] and the Defendant's Motion for Judgment on the Pleadings [Doc. 12].

## I. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income payments on September 19, 2005, alleging disability since September 2, 2005. [Transcript ("T.") 67]. Plaintiff's claims were denied initially, on the basis that "sugar diabetes" was not likely to last 12 months, and on reconsideration on the basis that "diabetes with hammertoes and problems

with feet" were not likely to last 12 months. [T. 51-2, 47-49]. A hearing was held before ALJ Francis Talbot on April 1, 2008, at which Plaintiff, who was represented by counsel, appeared and testified. [T. 317-335]. On July 9, 2008, the ALJ issued a decision denying the Plaintiff benefits. [Tr. 14-23]. The Appeals Council considered additional evidence, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [Tr. 5-8]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined

2

"substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. FACTS AS STATED IN THE RECORD

The Plaintiff was born on June 14, 1964 and was 43 years old at the time of the ALJ's hearing. [Tr. 67, 317]. The Plaintiff completed the twelfth grade and testified that he was enrolled in special education classes. [Tr. 321]. His past relevant work is as a fast food cook. [Tr. 332].

Plaintiff asserted that his disabling impairments were discovered after he fell at work; return to work required medical testing, which revealed diabetes, second degree burns on his feet, nerve damage and pain in his feet, as well as tingling and throbbing in his arms. [T. 327-8]. His medications include Lyrica for pain, Coreg, Actos, and Junivia for

hypertension and diabetes mellitus. [T. 150, 151]. Plaintiff also takes Cymbalta for anxiety. [T. 155]. He has had hyperbaric chamber treatment, which helps his foot ulcers. [T. 153]. During occasional bouts of back pain, he got some relief from muscle relaxants and Darvocet taken as needed. [T. 160, 162]. Seroquel was intermittently prescribed for insomnia. [T. 151, 174]. No medication list is of record; a blank form HA-4632, Claimant's Medications, is all that is present. [T. 36].

Review of the records shows that no complaints were made, and no limitations were medically imposed, regarding sitting. Dr. Kornmayer filled out a form dated January 2008 that includes notations suggestive of inability to sit for a full two hours. [T. 212]. Significant pain and difficulties with walking and standing, as well as the need for corrective foot surgery, were regularly reported subjectively and objectively throughout his records. Other than recorded diagnostic test results, all the records of his primary care physician include mentions of pain, or one or more of the pain-related symptoms throbbing, aching, burning and tingling, or conditions whose hallmarks are pain, neuropathy and myalgia. [T. 137-140, 143-4, 146-7, 150-7, 160-6, 170-2, 174-6, 180-2, 185-7, 189-90]. Plaintiff was provided a written excuse from work for several months starting on or before September 9, 2005 [T. 200], noted again as unable to work on February

14, 2006 [T. 179], and obtained a doctor's letter to his employer asking for work that takes him off his feet for all but 1-2 hours per day [T. 186]. His podiatrist noted on June 9, 2006 that he was unable to work until blood sugars get controlled to allow corrective surgery on his foot. [T. 193].

Diabetes mellitus remained poorly controlled throughout most of Plaintiff's recorded medical treatment. He sometimes exacerbated it by drinking sweet tea and other instances of poor diet; it would improve relative to other dates of treatment when he was better in adherence to diet and medication regimes [T. 163, 164, 152, 153, 170, 174], but it was, from onset through the last treatment of record, consistently characterized as uncontrolled diabetes. [T. 172, 165, 151, 150]. From the date of onset, diabetic neuropathy was well established as a significant impairment. [T. 143, 144, 147, 153, 155, 156, 172, 180, 182, 185, 187]. Ulcers arose on his feet [T. 151-154 ], and were treated with wound care [T. 218, 153, 154] including a hyperbaric chamber. Pain in his feet and legs was regularly associated with his diabetes. [T. 154, 156, 161, 216].

Plaintiff's pain and symptoms with his feet were further complicated by the presence of a pes cavus skeletal structure and an extra bone in his right foot diagnosed in May 2004. [T. 217] Those were present at the same time as a diabetic ulcer in the same foot. Id. He had normal vascular

5

status in both feet at that time. [T. 216]. Plaintiff also had hammer toes and contracted dorsal tendons. [T. 193]. He was fitted for orthotic insoles, and those were occasionally adjusted to minimize further worsening of diabetic conditions. [T. 218, 153]. Surgery was recommended for his foot, but he has to get his blood sugar under control before it could occur; the record shows surgery has not occurred. [T. 193].

Anxiety arose as a significant factor in November 2005 [T. 181], but did not seem to persist in strength [T. 180] and was reduced to intermittent appearance by May 2006 [T. 174]. In April 2006 depression and insomnia, rather than anxiety, were assessed. He felt that Lexapro and Seroquel worked. [T. 175]. In August 2006 he noted that insomnia improved on Seroquel. [T. 165].

## V. THE ALJ'S DECISION

On July 8, 2008, the ALJ issued a decision denying the Plaintiff's claim. [Tr. 14-23]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2009 and that he had not engaged in any substantial gainful activity since his alleged onset date of September 2, 2005. [Tr. 17]. The ALJ then found Plaintiff's diabetes mellitus with neuropathy and pes cavus to be severe impairments prior to the Plaintiff's DLI, but that the medical evidence did not confirm

anxiety to be a severe impairment. [Tr. 17]. The ALJ concluded, however, that the severe impairments did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 18]. The ALJ assessed the Plaintiff's residual functional capacity and determined that the Plaintiff was incapable of performing his prior work, but remained capable of sedentary work with the need to sit and stand at will, and to avoid use of scaffolds or ladders or hazardous environments. [T. 19]. The ALJ employed the Medical-Vocational Grids found at 20 C.F.R. Part 404, Subpart P, Appendix 2, to find that the Plaintiff could make the adjustment to other work existing in the national economy. [T. 22]. He obtained the testimony of a vocational expert to determine that jobs did exist in significant numbers within the thus reduced unskilled sedentary occupational base. [T. 22]. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the alleged onset date of September 2, 2005 through the date of the ALJ's decision. [Tr. 22].

**VI.   DISCUSSION**

Plaintiff is unrepresented before the Court, having allowed his counsel to withdraw after the filing of his Complaint at the urging of his mother. [Doc. 9]. This occurred before motions for summary judgment

7

were due. Plaintiff, acting *pro se*, timely submitted as his motion a letter with numerous enclosed records to the Court. [Doc. 11]. Those enclosed records all were part of the record before the ALJ, except for two pages. Of the two pages that do not appear to have been before the ALJ, one page appears to have been copied from the administrative transcript and had underlining added, apparently by Plaintiff, [Doc. 11-4, Page 8], and one page is a prescription for a cane. That is dated November 19, 2008, later than the dates this matter was before the ALJ or Appeals Council for consideration. [Doc. 11-4, Page 7].

From the materials submitted, and from the brief that Plaintiff's former counsel submitted to the Appeals Council [T. 311-316], it appears that Plaintiff assigns error to several matters, including the making of improper and conclusory credibility findings under 96-7p, particularly with regard to the Plaintiff's testimony regarding pain.

"Assessing the credibility of a claimant's symptoms of pain is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); SSR 96-7p.

> "First, a claimant must establish, by objective medical evidence, 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other

> symptoms alleged. ... If a claimant meets this burden, the ALJ must then evaluate the manner in which the intensity and persistence of these symptoms affect the claimant's ability to work....In so doing, the ALJ must consider not only the claimant's statements about [his] pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it."
> Craig, 76 F.3d at 594-595 (internal citations omitted).

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Plaintiff appears, at this juncture, *pro se*.  [Doc. 9] That, along with his only having received a twenty minute hearing, and the Court's cognizance of the remedial nature of the Act have prompted the Court to review this record carefully on the question of Plaintiff's pain and related symptoms.  [T. 319, 335]; Lashley v. Secretary of Health and Human Services, 708 F.2d 1048 (C.A.Tenn.,1983); Dorsey v. Bowen, 828 F.2d 247, 248 (4th Cir. 1987).

The conditions the ALJ found severe, diabetes mellitus with neuropathy and pes cavus, are both capable of causing pain, as the ALJ acknowledged. [T. 19]. In this District, such a finding constitutes satisfaction of the first prong of the test articulated in Craig. Fulbright v. Apfel, 114 F.Supp.2d 465, 477 (W.D.N.C.,2000); Pittman v. Massanari, 141 F.Supp.2d 601, 610 (W.D.N.C.,2001); Goodwin v. Halter, 140 F. Supp.2d 602, 608 (W.D.N.C. 2001). At the next step of the analysis, the ALJ dismissed Plaintiff's claims of pain through assertions that the claims are not supported by the record as a whole, and that as such and for additional reasons he and his mother are not credible. [T. 19].

Specifically, the ALJ concluded that "there is no indication of constant pain" and "there is little mention of pain in treatment records." In direct contradiction to those conclusions are the references in the evidence cited above to pain, and/or one or more of the pain-related symptoms throbbing, aching, burning and tingling, and/or conditions whose hallmarks are pain, neuropathy and myalgia, in all but two pages of his primary care physician's records, which span from September 2005 to February 2008. Pain is mentioned in his initial SSA form 3368 [T. 111], in a notation of his difficulty standing and profound limp by the disability interviewer [T. 120], and in his handwritten Disability Report-Appeal [T. 86]. In May 2007,

objective evidence consistent with pain was produced in a nerve conduction study, results of which were read as severe demyelinating peripheral neuropathy, a progressive condition involving the loss of the fatty sheath protecting nerve fibers. [T. 144].

Further directly contradicted by medical records is the ALJ's assertion that there is "no indication that the claimant is on chronic pain medication." Lyrica is a medication for the specific kinds of pain that result from diabetic neuropathy, which include burning, throbbing, and painful tingling of the feet or hands. [Lyrica, http://www.lyrica.com/dpn_home. aspx?source=msn&HBX_PK=s_diabetes+neuropathy&HBX_OU=52&o=23 085594|166163649|0, last visited March 3, 2010]. Plaintiff was first prescribed Lyrica in January 2006, just four months after his September 2005 date of onset. [T. 181, 17]. Careful review of the record suggests that he remained on Lyrica nearly continuously from that time through 2007, when it was increased to 100 mg t.i.d.. [T. 181, 180, 137, 155, 143,147]. Cymbalta is an antidepressant that is also used for the pain experienced by diabetics. [Cymbalta, http://www.cymbalta.com/index.jsp, last visited March 3, 2010]. Plaintiff was prescribed Cymbalta and other anti-anxiety and antidepressant medications with some frequency. Occasionally he received other drugs for pain, as well, specifically

Cataflam, Flexeril and Darvocet. Pain medication does not eradicate his pain, as noted in Dr. Kornmayer's notes that it takes his "feet back to normal hurt" [T. 155], small doses create "no obvious subjective relief" [T. 139], and Plaintiff wonders if Lyrica is "what make his muscles ache" [T. 180]. Plaintiff's testified that medicine slows down but does not stop the pain. [T. 328].

These are consistent with the Plaintiff's testimony that he has pain in his feet and legs that limit his sitting to 20 minutes [T. 323, 325], his walking to 15 or 20 minutes [T. 325], his standing to 15 minutes [T. 325]. He testified that his pain involves tingling [T. 325], which is the specific term he used with Dr. Kornmayer during two separate visits in 2007. [T. 143, 156]. He testified about burns on his feet [T. 327]. Plaintiff also described burning sensations to Dr. Kornmayer in September 2005, February 2006, and May 2007. [T. 189, 187, 143]. The fact that he has a severe nerve damage condition comports with his 2008 testimony that his pain was constant, and only "slowed down" but was not stopped by medicine. [T. 328, 144]. He has had open diabetic wounds treated in wound care centers and a hyperbaric chamber. [T. 182, 153-4].

The ALJ also assessed that Plaintiff's mother was not credible because she is related to him. He cited to no specific evidence, however,

establishing a dishonest motivation or for diminishing her credibility. That implies a rule that all relatives' testimony must be rejected as biased. Such a rule directly contradicts the "other source" evidence rule. 20 C.F.R. 404.1513(d) and 416.913(d). "Spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers" are "other sources" who may offer evidence "based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p at *2.

In addition, the assessment that Plaintiff's mother is not credible because she is not medically trained is an erroneous application, to a lay witness, of the legal standards for evaluating medical evidence. 20 C.F.R. § 404.1527(d) and 416.927(d) (2006); SSR 96-2p. In the two pages of her testimony in the transcript, she testified from the vantage point of seeing him every day, about paying for his medicine, doing his laundry, his shopping, and his driving, his complaints to her about pain, and the distance and time it takes him to walk to her house. [T. 331]. She did not offer any statement that requires or assumes any degree of medical knowledge.

The Court can find no evidence of record suggesting deficiencies in the credibility of Plaintiff or his mother. His doctors' notes about his

complaints, and his short, plain testimony about pain at the hearing, do not demonstrate exaggeration of his complaints, or that his doctor doubted his reports.

The ALJ's credibility and pain assessments failed to follow applicable standards and were not supported by substantial evidence.

The vocational expert testified that based on the RFC for modified sedentary work that the ALJ established, and absent constant pain, the Plaintiff could do specified sedentary jobs. But both the expert and the ALJ acknowledged that if the constant pain to which Plaintiff testified were accepted as true, Plaintiff's concentration would be "knocked out" and "he could not do anything." [T. 333]. Because VE testimony supported a finding of disability if Plaintiff's pain testimony were taken as credible, the ALJ's erroneous evaluation of pain and credibility prejudiced him and requires remand.

## V. CONCLUSION

These errors require remand. Upon remand, the ALJ shall develop the record on Plaintiff's pain, including seeking a full list of medications prescribed from the date of onset to the present for or relating to Plaintiff's pain, and contacting Plaintiff's treating physician to obtain detailed, narrative clarification of the intensity, persistence, and limiting effects of

14

Plaintiff's pain and other symptoms on the major work functions. The ALJ shall grant a new hearing, and issue a new decision.

In light of this decision, Plaintiff's other assignments of error need not be addressed,[1] but he is free to raise them upon remand.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **GRANTED** to the extent that the Plaintiff seeks reversal of the Commissioner's decision denying him disability benefits. To any extent that the Plaintiff seeks an immediate award of benefits, the Plaintiff's Motion [Doc. 11] is **DENIED**.

Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** to the Commissioner for further administrative action consistent herewith.

---

[1] Plaintiff also appears to assign error to (1) Failure of the ALJ to state good cause for rejecting Plaintiff's treating physician's opinion, (2) Failure of the ALJ to determine if there was a conflict between the VE's testimony and the DOT under SSR 00-4p, (3) That the ALJ's summary of the medical evidence was inaccurate and his RFC assessment conclusory and without rationale or reference to supporting evidence as required by SSR 96-8p, and (4) The ALJ's failure to include the required "function by function assessment" under SSR 96-8p.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Judgment on the Pleadings [Doc. 12] is **DENIED.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 25, 2010

Martin Reidinger
United States District Judge